IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-102-KS

| | |
|---|---|
| MELENA THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Pursuant to the Supplemental Rules for Social Security Actions, Plaintiff filed an opening brief and the Commissioner filed a motion to remand, to which Plaintiff responded in opposition. The matter is, therefore, ripe for decision. Having carefully reviewed the administrative record and the parties' filings, the court reverses the Commissioner's decision and remands the matter to the Commissioner for an award of benefits.

## STATEMENT OF THE CASE

Plaintiff applied for DIB and SSI on August 19, 2014, with an alleged onset date of January 1, 2014.[1] (R. 392–407.) The application was denied initially and upon

---

[1] Plaintiff amended her alleged onset date on May 10, 2017, to January 1, 2014. (R. 419.)

reconsideration, and a request for hearing was filed. (R. 330–40, 343–61.) A hearing was held on May 10, 2017, before Administrative Law Judge ("ALJ") Flora Vinson, who issued an unfavorable ruling on December 27, 2017. (R. 8–36, 196–247.) On August 31, 2018, the Appeals Council denied Plaintiff's request for review. (R. 1–7.) Plaintiff then sought judicial review in this court. *Thompson v. Saul*, No. 5:18-CV-489-FL (E.D.N.C. filed Oct. 15, 2018). That action resulted in the court reversing and remanding the matter to the Commissioner pursuant to sentence four. *Thompson v. Saul*, No. 5:18-CV-489-FL, 2019 WL 6701625 (E.D.N.C. Sept. 19, 2019), *mem. & recommendation adopted by* 2019 WL 6694622 (E.D.N.C. Dec. 6, 2019).

Upon remand from this court, the Appeals Council remanded the matter to ALJ Rebecca Adams, who held a hearing on September 16, 2020, and issued an unfavorable ruling on February 3, 2021. (R. 2029–56, 2058–99, 4146–50.) Plaintiff then exercised her right to direct judicial review of ALJ Adams' decision and filed another action in this court. *Thompson v. Kijakazi*, No. 5:21-CV-196-RJ (E.D.N.C. filed Apr. 28, 2021). Both parties then consented to remand, and this court ordered that the matter once again be remanded to the Commissioner pursuant to sentence four. Order, *Thompson v. Kijakazi*, No. 5:21-CV-196-RJ, ECF No. 30 (E.D.N.C. Feb. 14, 2022).

Upon the second remand from this court, the Appeals Council remanded to ALJ Adams, who held another hearing and again issued an unfavorable decision. (R. 4028–4108, 4179–83.) Plaintiff exercised her right to direct judicial review of ALJ Adams' decision and filed the instant action. Plaintiff filed her opening brief on July 5, 2023. (Pl.'s Br. [DE #20].) On August 4, 2023, the Commissioner moved to remand,

2

stating only that "further fact finding and analysis is required" and noting that counsel for Plaintiff did not consent to the motion. (Comm'r's Mot. Remand [DE #24].) The Commissioner did not file a supporting memorandum as required by this court's local rules. *See* Local Civ. R. 7.1(e) (E.D.N.C. May 2023). On August 22, 2023, Plaintiff filed a response in opposition to the Commissioner's motion, to which the Commissioner did not reply. (Pl.'s Resp. Opp'n [DE #25].)

In sum, Plaintiff has had three hearings before two ALJs resulting in three unfavorable decisions, two of which have been remanded after federal judicial review. Plaintiff now seeks federal judicial review of the third unfavorable decision. The Commissioner concedes that the third decision is erroneous and requests remand for further consideration by the ALJ. Plaintiff opposes remand and asks this court to reverse and direct the Commissioner to award benefits.

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations

3

omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and

[the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter related to the DIB claim, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2017. (R. 4034.) At step one, the ALJ found Plaintiff engaged in substantial gainful activity in 2009 and 2013, but that "there has been a continuous 12-month period(s) during which [Plaintiff] did not engage in substantial gainful activity."[2] (*Id.*) Next, the ALJ determined Plaintiff has the severe impairments of chronic lower back and neck pain with radiculopathy due to degenerative disc disease, migraine headaches, carpal tunnel syndrome, hypertension, obesity, right shoulder degenerative joint disease, right knee degenerative joint disease, right hip bursitis, asthma, diabetes, post-traumatic stress disorder (PTSD), and depressive disorder. (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 4035–39.)

---

[2] As noted above, Plaintiff amended her alleged onset date to January 1, 2014.

5

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: She can climb step ladders up to 4 feet in vertical height but none higher, and cannot climb ropes or scaffolds. Frequently climb ramps, occasionally climb stairs. She must avoid concentrated exposure [to] extreme heat, extreme cold, humidity. She must avoid concentrated exposure [to] respiratory irritants e.g. dust, smoke, fumes, areas of poor ventilation. She must avoid concentrated exposure [to] workplace hazards as those terms are defined in the [Selected Characteristics of Occupations]. Frequent but not constant pushing, pulling or operating hand controls with the right upper extremity. Occasional overhead reaching with the right upper extremity. Frequent but not constant lateral and forward reaching with the right upper extremity. The individual can understand, remember and carry out instructions for simple routine tasks not subject to strict time deadlines and/or quota requirements. She has the ability to maintain attention and concentration for two-hour segments for completion of simple routine tasks (assuming normal 15-minute morning and afternoon breaks and a 30-minute lunch break). She can interact frequently with supervisors, frequent casual contact with coworkers and occasionally with the public. She has the ability to adapt to workplace changes involving simple work-related decisions.

(R. 4039.) In making this assessment, the ALJ stated that she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence." (R. 4039–40.) At step four, the ALJ concluded that Plaintiff is not able to perform any past relevant work. (R. 4048.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: merchandise marker (DOT #209.587-034), mail sorter (DOT

6

#209.687-026), and clerical assistant (DOT #239.567-010). The ALJ concluded that Plaintiff has not been disabled under the Act from July 2, 2004, through the date of the decision. (R. 4049.)

## IV. Plaintiff's Arguments

On review, Plaintiff raises two arguments: (i) the ALJ erred by failing to evaluate the evidence regarding Plaintiff's peripheral vascular disease ("PVD"), or more generally, Plaintiff's lower extremity venous insufficiency, and to account for limitations caused by this impairment in the RFC, and (ii) the ALJ erred by failing to conduct a function-by-function analysis of Plaintiff's ability to handle, finger and feel in violation of this court's previous remand order. (Pl.'s Br. at 6–26; Pl.'s Resp. Opp'n.) The Commissioner's only response to these arguments is the statement in her motion to remand that additional fact-finding and analysis is necessary. (Comm'r's Mot. Remand.) For the reasons explained below and in Plaintiff's brief, the court agrees with Plaintiff as to the ALJ's error regarding evaluation of Plaintiff's PVD. Because the record clearly establishes that Plaintiff's PVD would require her to elevate her legs throughout the workday in a way which would preclude employment and "another ALJ hearing on remand would serve no useful purpose," the court orders remand to the Commissioner for an award of benefits. *Arakas v. Comm'r of SSA*, 983 F.3d 83, 111 (4th Cir. 2020).

The record is replete with evidence regarding Plaintiff's longstanding issues with PVD and the need for leg elevation. (*See generally* Pl.'s Br. at 9–14.) Listed below are examples of medical assessments and diagnoses:

- August 2014 venous duplex study showing blood flow incompetence in Plaintiff's lower extremities (R. 2361–62);
- October 2015 arterial study revealing aortoiliac disease and diminished blood flow in lower extremities (R. 1056);
- October 2015 assessment of PVD after physical examination (R. 1057–58);
- January 2016 peripheral angiogram revealing atherosclerosis and angioplasty of Plaintiff's right superficial femoral artery with initial 70% blockage and 20% residual blockage after surgery (R. 1059–60);
- February 2016 venous duplex study update and assessment of PVD (R. 1064–65);
- April 2018 venous study revealing reduced competency at numerous veins and venous junctures in Plaintiff's legs (R. 2338);
- April and July 2018 treatment notes indicating Plaintiff's venous insufficiency rated as class III and would limit Plaintiff's activities of daily living (R. 2277, 2282);
- July and August 2018 ablation surgeries on Plaintiff's right leg (R. 2271);
- November 2018 treatment note indicating Plaintiff's venous insufficiency rated as class III and would limit activities of daily living (R. 2273–74);
- May 2019 assessment of venous insufficiency in legs (R. 3048);
- July 2020 assessment of chronic venous hypertension with inflammation of both legs (R. 3100);
- September 2020 venous study indicating venous reflux in particular location in left leg (R. 4521);

- November 2020 ablation surgery on Plaintiff's left leg (R. 4633–34);
- December 2020 prescription of lymphedema pumps due to chronic edema (R. 4805–06);
- December 2021 and January 2022 studies revealing diffuse atherosclerosis (R. 4792–96); and
- February 2022 venous testing revealing deep venous reflux in both legs (R. 5207).

In conjunction with the foregoing assessments, medical providers have consistently advised Plaintiff to elevate her legs, avoid prolonged periods of sitting or standing, and use compression socks, even when Plaintiff has experienced some improvements. (R. 1048–49, 1065, 1071, 2282, 3048, 3100, 4527, 4656, 4795, 5191–92, 5194–96.)

During the September 14, 2022, hearing before ALJ Adams, the Vocational Expert (VE) testified that if Plaintiff needed to elevate her legs while seated at a workstation, Plaintiff would be unemployable. (R. 4104–05.) The VE also testified that if Plaintiff would be off-task at work 15% of the time or more, or would miss more than one day per month on a regular basis, she would be unemployable. (R. 4106.) During the September 16, 2020, hearing before ALJ Adams another VE provided similar testimony. (R. 2088–90.)

Despite the foregoing evidence, ALJ Adams did not identify Plaintiff's PVD as a severe impairment. Instead, she limited her discussion of this medical condition to a summary of Plaintiff's testimony (R. 4040) and the following:

> In April 2017 [Plaintiff] reported pain and swelling in the left lower extremity. She was prescribed compression hose (Exhibit 32F [R. 1799–1803]). These issues continued intermittently in 2018, 2019, and 2020

9

and she was diagnosed with venous valvular insufficiency (Exhibit 77F [R. 4521–4636]). In November 2020 laser ablation was performed (Id., p. 113 [R. 4633]). In December she reported improvement in her pain and swelling, but some continued swelling. Trace edema was noted on exam (Exhibit 80F, p. 13-15 [R. 4804–06]). [Plaintiff] continued to receive treatment, but reported in August 2022 that edema and cramping were rare and not lifestyle limiting (Exhibit 97F, p.4 [R. 5494]).

(R. 4034). There are several problems with this analysis by ALJ Adams.

Generally, it mischaracterizes Plaintiff's PVD to the extent it omits consideration of numerous pieces of evidence in the record. Moreover, ALJ Adams failed to mention that, in the same August 2022 treatment note, the medical provider "[d]iscussed the importance of continued use of thigh-high, 20-33mmHg compression stocking and leg elevation" and "encouraged [Plaintiff] to avoid standing or sitting for long periods of time whenever possible." (R. 5494.) This is proscribed cherrypicking. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010))).

As noted above and detailed in Plaintiff's brief, all medical evidence points to Plaintiff's PVD and lower extremity venous insufficiency as being a severe impairment with a concomitant need for Plaintiff to elevate her legs. (*See generally* Pl.'s Br. at 9–14.) In her motion to remand, the Commissioner has pointed to no contrary evidence that would require reconciliation by an ALJ. (Comm'r's Mot. Remand); *see* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) (ALJ must "explain how any material inconsistencies or ambiguities in the evidence were considered and resolved"). Given the testimony from the VE and the evidence regarding Plaintiff's

10

need to elevate her legs and be off-task due to her PVD and venous insufficiency, there is no useful purpose in remanding this matter to the Commissioner for additional fact-finding and a fourth ALJ hearing. *See Arakas*, 983 F.3d at 111–12. Accordingly, the court finds that reversal and an award of benefits is appropriate here as the ALJ improperly analyzed the evidence relating to Plaintiff's PVD and the undisputed evidence in the record compels the conclusion that Plaintiff is disabled under the Act.[3]

## CONCLUSION

For the reasons stated above, the Commissioner's decision is reversed and the matter is remanded to the Commissioner for an award of benefits.

This 3rd day of November 2023.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge

---

[3] Discussion of Plaintiff's second argument—involving the ALJ's functional analysis of Plaintiff's ability to handle, finger, and feel—is not necessary. However, review of ALJ Adams' decision reveals that she did not conduct such an analysis and the Commissioner, on review, does not offer any argument to the contrary.

11